HEARD NOVEMBER TERM, 1877.

## GEIGERS vs. KAIGLER.

The Act (Gen. Stat., 458, Ch. XC, § 9,) in relation to compromises by executors and administrators does not apply to debts contracted with the executor or administrator himself, though they be assets of the estate; and such Act, even where it is applicable, is permissive merely, and does not. it seems, affect compromises otherwise valid.

A compromise by an administrator which the Court would have sanctioned if application had been made beforehand for that purpose will be sustained.

### BEFORE COOKE, J., AT RICHLAND, AUGUST, 1876.

This was an action by Caroline J. Geiger, Isabella C. Geiger, Juriah E. Geiger, Frederick Ann Geiger and John A. Geiger for himself and as administrator of the estate of H. J. Geiger, deceased, against George Kaigler, for foreclosure of a mortgage.

The facts are sufficiently stated in the circuit decree and the opinion of this Court.

The circuit decree is as follows:

COOKE, J.  This action was tried before me at a special term of the Court held for said County on the third Monday in July, 1876. The action was brought for the foreclosure of a mortgage, executed on the 5th day of January, 1871, by the defendant to one Alexander Geiger, (now deceased,) as the executor of the will of Henry J. Geiger, to secure six several bonds bearing even date with the mortgage, and each conditioned to pay the sum of one thousand three hundred and fifty dollars in three successive annual installments.  The plaintiffs are the sole surviving distributees of the estate of Henry J. Geiger, and one of them, John A. Geiger, is also the administrator of the estate with the will annexed.  At the trial the complaint was amended, on the motion of the plaintiffs, by inserting the name of Frederick Ann Wolfe in the place of Frederick Ann Geiger, and by adding as parties plaintiff the names of J. A. Wolfe, husband of F. A. Wolfe, and William Geiger, husband of Juriah E. Geiger.  The complaint states that the bonds and mortgage referred to were given to secure the purchase money of a tract of land in Lexington County, of which the said Henry J. Geiger was seized and possessed in his lifetime and at the time of his death, and which his executor, Alexander Geiger, had sold to the defendant.  There is no averment that the executor had the power to make the sale under the will of his testator, nor was any

proof offered to establish the existence of such authority in the executor; and this was made the ground of a claim on the part of the defendant that the decree ought not in any case to extend beyond an order of foreclosure and sale,—the defendant contending that without direct evidence upon the subject the Court must presume that the sale of the land was unauthorized, and that, while he might not be permitted to controvert the title of his mortgage, so far as the foreclosure was concerned, there was no consideration to support an ulterior decree for money. In the view I have taken of the case, it is not necessary to consider the merits of this objection, and I shall, therefore, assume that the execution of the bonds and mortgage was a sufficient recognition of the executor's authority for all purposes. The authority of the executor, then, being assumed, and the decision of Judge Carpenter upon the demurrer originally filed to the complaint having set at rest any question as to the present administrator's successorship to the trust, the validity of the defendant's main ground of defense is fairly presented for consideration. This defense is, that after the mortgage debt had become due an agreement was made between the parties to satisfy the debt by the surrender of the land to the estate.

The defendant insists upon his equity to have this agreement enforced by the Court, on the ground that he had performed his part in good faith by placing the administrator in possession of the land and permitting him to enjoy its profits and usufruct since January, 1874; and because the plaintiffs ought not to be allowed to repudiate the bargain after they have acted upon it and enjoyed its benefits, more especially as the marketable value of the land has in the meantime depreciated from the financial stress of the country. The evidence leaves no doubt in my mind as to the fact that such an agreement was made between the defendant and John A. Geiger, acting as the representative of the estate; the defendant agreeing to surrender possession of the land and make all necessary conveyances, and the administrator on his part promising to satisfy and deliver up the bonds and mortgages. Nor have I any doubt that the possession and control of the land assumed by the administrator, John A. Geiger, immediately afterwards, in the Spring of 1874, must be referred entirely to this agreement. The only reason why this agreement was not perfected in all aspects seems to have been that the bonds were in possession of Henry A. Meetze, Esq., to whom they had been entrusted as the attorney of one Inabinet, a

previous administrator of the estate of Henry Geiger, and Mr. Meetze refused to deliver them until administration was had upon the estate of his client. It was also proved that when the settlement was first proposed the administrator desired time for the purpose of consulting his co-distributors in the estate, who resided in Alabama, and that some three weeks or more after this he went to the defendant's house and informed him that he would make the settlement. If this transaction had taken place between parties acting wholly in their own right, there can be no question that in equity it would operate as a satisfaction of the debt.

The part performance was of such a character as, upon all the authorities, to take the case without the purview of the Statute of Frauds, and in equity that must be held to have been done which ought to have been done.—Adams Eq., *86; *Anderson* vs. *Chick*, 1 Bail. Eq., 118. But the fact that John A. Geiger was acting not only for himself individually, but also as a fiduciary of others interests, renders it necessary, if the *cestuis que trust* are to be bound, that something more should appear besides the bare making of the agreement and its enforceable character in equity.

Such a settlement between a trustee and a debtor of the estate is not necessarily binding, even when the parties act in good faith.— Sanders on Uses and Trusts, 431; Perry on Trusts, §§ 475, 482; Johnson's, Lewis, Bill Eq., 48; *Smith* vs. *Prothro*, 2 S. C., (N. S.,) 371. Neither is it necessarily void at the option of the *cestuis que trust*. Not the first, because the trustee is acting outside of the strict line of his authority, and those with whom he acts are bound to take notice of this; not the second, because, for the safety of the estate itself, it is necessary that a certain degree of discretion should reside in the trustee, so that if an exigency arises his hands may not be tied by too inflexible a rule. The principle which must govern such cases has recently undergone examination in our Supreme Court, in the case of *Bacot* vs. *Heyward*, which, upon a review of the leading authorities, states it as follows: *Bacot* vs. *Heyward*, 5 S. C., (N. S.,) 441: "If the nature of the transaction, though it may even be the compromise of a debt, shows that he [the trustee] was actuated by good intentions and exercised due caution and fidelity in respect to the interests of his *cestuis que trust*, a Court of equity will confirm what it would, on due application, have ordered, for the result to the trust property is in either event the same." This rule leaves each case to depend upon its own peculiar

circumstances, and requires that the Court should judge of the propriety of the settlement by placing itself as nearly as possible in the position of the trustee at the time. The difficulty in applying the rule in the present case arises from the fact that the administrator, who is also interested as a distributee, now seeks to repudiate the settlement, and the motives which induced it upon his part can, therefore, only be gathered inferentially; but this ought not to prejudice the defendant.

At the trial the following facts were developed: The premises were originally bargained to the defendant by the executor, Alexander Geiger, in January, 1863, for the sum of $12,000, payable after the war, but upon a written agreement that the defendant should be at liberty to return the land and cancel the debt if, by the depredations of the enemy, his cotton and other property upon the place should be destroyed. The contingency contemplated by this agreement actually occurred, and thereupon, but not till some years after the war, the defendant sought to return the land to the executor. To this the executor refused to accede, on the ground that the defendant had waived his rights by delay, and suit was brought to enforce the contract of sale. This suit was stopped between the parties by a settlement; the executor made title to the land, and the debt, which then amounted to $16,200, was arranged by the payment of one-half, ($8,100,) partly in cash and partly in a bond of Henry Geiger held by defendant, and by giving the six bonds and mortgage which are the subject of this action for the other half. The bonds and mortgage in this action thus had their birth on a settlement of a preceding liability with the executor of the estate. About the time of this first settlement with the executor the defendant placed his son-in-law, Kinsler Davis, upon the land, who put upon it improvements of considerable value. [The value of these improvements was variously estimated by the witnesses—by one as high as $4,000, but by the smallest estimate, that of the witness Knight, they could not have been worth less than $2,000—at the time Geiger went into possession.] He also paid upon the bonds on the 8th of June, 1874, the sum of $1,100. Davis was unsuccessful in his management of the property, and the defendant testified that when the " panic " supervened, becoming hopeless of his ability to discharge the debt, he made the proposition to surrender the land. Evidence was introduced on the other side to show that at the time of the settlement the value of the land had

been impaired by the cutting of timber during Davis's occupancy. Geiger and Knight testified that very nearly the whole of the timber within a range of two miles of the saw mill had been cut. Kaigler and Davis, on the other hand, testified that when the land was first purchased it had already been to a large extent depleted of its timber, so that logs had often to be brought to the mill from a distance of more than two miles. As, however, before the settlement was made the administrator was taken over the place and had every opportunity to judge of its condition, I do not think it necessary to go minutely into this part of the testimony. That the land has since depreciated upon the plaintiffs' hands can, of course, not affect the issue here. I think it may well be assumed that the bargain, at the time it was made, was one of no disadvantage to the estate, which had certainly profited largely from the transaction as a whole, and that, under the circumstances, the settlement was so fair and reasonable that the Court would have sanctioned it had the administrator applied there for authority.

There are other circumstances which would make it exceedingly harsh and inequitable to disturb this settlement at the instance of the plaintiffs. As has already been stated, when the settlement was first proposed time was given to the administrator, at his own request, for the purpose of consulting the parties in interest, and the matter was delayed for some time on that ground. This of course does not prove that the other distributees were consulted and gave their consent; but when it is considered that it was easily within their power to show that no such consultation had taken place, if such was in truth the fact, their silence is at least suspicious ; and, when connected with the further fact that their representative remained in notorious possession of the place for almost two years before they stirred in the matter, it is not easy for the mind to escape the conclusion that they knew and acquiesced in the settlement. These distributees, so far as appears, are all *sui juris*. It has been suggested in behalf of the plaintiffs that to decree the specific performance prayed for by the defendant might restore to them the land with the title embarrassed by intermediate judgment liens against the defendant Kaigler. It has not been made to appear that any such judgment exists; but as it is within the power of the Court, and cannot prejudice the defendant, they may have the assistance of the Court in perfecting their title to the land under the energy of the mortgage. I shall, therefore, decree a foreclosure

of the mortgage and sale of the lands. If there should be any surplus upon the sale the plaintiffs will be entitled to it. If the proceeds shall prove deficient, the bonds and mortgage must, notwithstanding, be marked satisfied. In conformity with the foregoing opinion, my findings of fact and conclusions of law are as follows:

I find as a matter of fact:

1. That on or about the 6th day of January, 1874, an agreement was entered into between the plaintiff, John A. Geiger, acting as the representative of the estate of Henry Geiger, deceased, on the one hand, and the defendant on the other hand, whereby the said John A. Geiger, upon the surrender and conveyance to him as administrator of the mortgage premises by the defendant, agreed to satisfy and deliver up to the defendant the bonds and mortgage referred to in the pleadings; and that, in pursuance of this agreement, the said administrator was let into possession of the said premises, and assumed and has ever since exercised an exclusive control over the same, receiving the rent and profits of the land and dealing with it in all respects as the owner.

2. That the defendant has always been ready and willing to complete the performance of the agreement upon his part, and that it was the fault of the said administrator that the agreement was not perfected by the legal conveyance of the lands and the satisfaction of the bonds and mortgage.

3. That the agreement was made in good faith on both sides, and was, under all the circumstances, a fair and most reasonable settlement.

And as a conclusion of law:

That the plaintiffs are bound in equity by the settlement.

It is, therefore, ordered that the plaintiffs have leave to apply at the foot of this decree for all necessary orders to carry it into effect by the foreclosure of the mortgage set forth in the complaint and the sale of the mortgaged premises; but that the said defendant be, and he is hereby adjudged to be, discharged and released from all personal liability upon the said bonds, which must be marked fully satisfied upon the sale.

It is further ordered that the plaintiffs pay the costs of this action, including the defendant's costs and disbursements.

The plaintiffs appealed on the following grounds:

1. Because upon the case made the plaintiffs were entitled to a decree in foreclosure as against the mortgaged premises, and to a money decree as against the defendant for any balance that might remain unsatisfied should the proceeds of sale fail to pay the debt in full.

2. Because the defendant sets up in his answer, as an equitable defense, an alleged parol agreement, and prays a specific performance thereof; the said alleged agreement, being as to land, was in itself void under the Statute of Frauds, the same not having been reduced to writing, or evidenced by some memorandum thereof in writing, signed by the parties to be bound thereby.

3. Because there was no part performance of the said alleged agreement which could operate to take it out of the statute; the possession of one of the plaintiffs, (John A. Geiger,) relied upon by the defendant to give effect to such part performance, was referable to an existing legal right to enter upon conditions broken, (the mortgagee being out of possession,) and could not be referred to said alleged agreement; and the introduction of parol evidence under such circumstances to give character to the possession is wholly without authority and would be directly within the mischief that the statute was intended to remedy.

4. Because the said John A. Geiger was not a trustee in the sense of the decree, and could not take possession of land (except under certain peculiar circumstances) in his capacity as administrator, as is alleged in the answer; his duties as administrator *de bonis non* were confined to the proper administration of such personal assets as came into his hands unadministered, and his possession of land, or his purchase of land directly or indirectly for the estate, was without authority.

5. Because the defendant knew that his bond and mortgage were assets in the hands of John A. Geiger, as such personal representative, to be collected by him, and the proceeds were first to be applied to the payment of debts, if any, and second to be held subject to a division among the parties jointly entitled thereto; and any agreement between the defendant and the said John A. Geiger, *as administrator*, to divert the assets from their proper channel was, on the part of the administrator, a breach of trust, and on the part of the defendant a fraud, and even in the case of an *executed* agree-

ment could be set aside by the parties entitled to a distribution of the fund.

6. Because it is respectfully submitted that for the Court to go further and by its decree to set up an *executory* parol agreement and enforce the same, against the wishes and interests of the distributees, against the positive denial, under oath, of the administrator that he ever entered into such an agreement or ever attempted to bind the interests of those entitled to the fund, is in effect for the Court to set up and compel *a breach of trust by decree,* and to enforce its specific performance *by decree* against the protestations of the administrator and the rights and interests of those entitled to its protection.

7. Because the decree concludes the rights and interests of those plaintiffs who, it is admitted, were not parties to the agreement: (1) by giving validity and effect to certain alleged acts of John A. Geiger, *as administrator,* who, as such, had no authority in law to bind the others, and who denies that he ever did so bind them; and (2) by sustaining against them as conclusive evidence a mere inference of a third party, founded upon certain words of the said John A. Geiger, all which said alleged words, acts and inferences were no part of the alleged contract.

8. Because the decree draws this unauthorized conclusion against the plaintiffs, who were not parties to the alleged agreement, upon the extraordinary legal hypothesis that they were required to *disprove* at the trial (at which they were not present) what was not alleged against them in the answer, to wit, their knowledge of the alleged acts and words of the said John A. Geiger, as administrator, and their knowledge of the inference drawn therefrom as affecting their rights; and, further, that they were required to rebut the evidence (to wit, the words, acts and inference aforesaid,) which for the first time came out at the trial and was unequivocally rebutted by the oath of the said Geiger as wholly untrue.

9. Because the party seeking in equity to enforce the specific performance of an agreement must show that the contract is certain, fair and just in all its parts; whereas the alleged contract is uncertain, unfair, unjust and without adequate consideration; unjust and unfair because defendant, after taking from the land 3,600,000 feet of lumber, and selling the same at large prices, according to his own testimony, now asks a decree that the naked land (its present value, by defendant's own testimony, not being over $4,000,) shall

be returned and taken in substitution for and satisfaction of the debt, and seeks to have the bonds and mortgage surrendered to him, and without adequate consideration, because the alleged agreement gives, and proposes to give, to the plaintiffs nothing but what they in fact already had, to wit, the land, which it 'is admitted could never bring the amount of the debt.

10. Because, after the argument of the cause, the fact was brought to the knowledge of the Court that the plaintiff Isabella C. Geiger was administratrix *de bonis non* in joint administration with the said John A. Geiger, (which fact had been inadvertently omitted,) and as such administratrix she had a legal title to the choses in action belonging to the estate, which could not be bartered off without her consent and authority and land substituted therefor.

*Pope,* for appellants:

Upon the examination of the defendant, Kaigler, himself as a witness, upon the first intimation of the line of evidence, the objection was promptly interposed: First, that as the alleged contract was for the transfer of land, parol evidence was not permissible; second, that such agreement, if any, must be established by some memorandum thereof in writing.

Based upon this parol evidence, the Judge comes to his conclusion in the following words: "The evidence leaves no doubt in my mind as to the fact that such an agreement was made between the defendant and John A. Geiger, acting as the representative of the estate; the defendant agreeing to surrender possession of the land and make all necessary conveyances, and the administrator, on his part, promising to satisfy and deliver up the bonds and mortgages. Nor have I any doubt that the possession and control of the land assumed by the administrator, John A. Geiger, immediately afterwards, in the Spring of 1874, must be referred entirely to this agreement."

Both conclusions are utterly indefensible in law.

These exceptions need scarcely an authority to sustain them. We find a mortgagee in possession of land. The law refers his possession to his right of entry as mortgagee, and parol evidence cannot be received to change the character of the possession. If *possession* of a party be relied upon to evade the Statute of Frauds, then to bring it within the rule it must be impossible to refer the

possession to any other legal right, and it must point to the alleged parol contract and to that alone.

That judicious author, Mr. Adams, (Equity, 86,) says: "The doctrine on this point is called the doctrine of part performance. Such, for instance, is the case where upon a parol agreement for the purchase of an estate a party *not otherwise entitled to the possession* is admitted thereto, for if the agreement *be invalid* he is made a trespasser and is liable to answer as a trespasser at law." "The agreement must be clearly and unequivocally proved, and must be shown distinctly to be referable *exclusively* to the contract set up."— *Duval* vs. *Myers*, 2 Maryland Ch., 401. Possession is often held to be evidence of part performance; but it must be in pursuance and execution of an agreement and traceable to no other title.

In the case of *Savage* vs. *Carroll*, (1 Ball & B., 282,) Lord Manners says: "Whether the possession be an unequivocal act, amounting to part performance, must depend upon the transaction itself,— whether it be so circumstanced that it can refer *only to a contract of sale.*"

The rule of law in such case is simple, the test being whether the possession must be a trespass unless the party in possession can only defend himself by a contract. If the possession can be defended by some other right or title, then evidence cannot be given of it to support a parol contract.

In the case of *Smith* vs. *Smith*, (1 Rich. Eq., 136,) Chancellor Dunkin says: "In *Clinan* vs. *Cook*, (1 Sch. & Lef., 41,) Lord Redesdale states that possession is only construed as part performance where the party might be treated as a trespasser unless evidence were admissible of the parol agreement. This is, perhaps, the most satisfactory test." The Chancellor refers to the case of *Morphett* vs. *Jones*, (1 Swans., 181,) where the Master of the Rolls thus states the law: "The acknowledged possession of a stranger in the land of another is not explicable except on the supposition of an agreement, and has, therefore, constantly been received as evidence of an antecedent contract and as sufficient to authorize an inquiry into the terms." And, reasoning from this, he proceeds to show that the possession of the complainant in *Smith* vs. *Smith* is only explicable, in the language of *Morphett* vs. *Jones*, upon the *supposition of an agreement.* Mr. Justice Story (2 Equity, § 763,) is full to the same point.

Let these tests be applied to the circumstances of this case. Is the possession of the complainant, John A. Geiger, only explicable upon the supposition of an agreement, so as to authorize an inquiry into the terms of that agreement? Here we have a mortgage, the condition of which has been broken, and we find the mortgagee in possession. Is the mortgagee such a stranger to the estate as to make his possession inconsistent with the title and render that possession a trespass?

The law is clear. Unquestionably, in South Carolina, the mortgagor holds the fee under the statute which modifies the common law, and the mortgage is a mere security. But it is equally unquestioned that where the mortgagor is out of possession the mortgagee may enter upon condition broken, and the incidents of the estate at the common law are restored. Nowhere has the doctrine been better expressed than by Mr. Justice Willard, in the case of *Norton* vs. *Lewis*, 3 S. C., 33: "The practical effect of the Act of 1791 was to leave in the mortgagor in possession an estate determinable on the contingency of his relinquishing possession. On the happening of such contingency, the *statute estate* was gone and the parties stood on their rights as existing previous to the statute."— *Williams* vs. *Beard*, 1 S. C., 309. What were those rights? Simply the right of the mortgagee at common law. The fee became vested in the mortgagee. However Courts or Judges may have differed as to their methods of reasoning, or the sufficiency of reasons for the doctrine, all are agreed that such is the established law of the State.—*Mitchell* vs. *Bogan*, 11 Rich., 686. Under this doctrine the status of the mortgagee and of his real and personal representatives are fixed by their common law relations. In the language of Mr. Justice Wardlaw: "Upon the death of the mortgagor, without previous assignment of his interest, the equity of redemption passed to his devisee or heir. Upon like death of the mortgagee, the land passed to his heir or devisee, in trust for his executor, the owner of the debt secured."—Wms. on Ex., 574 ; 2 Wash. on Real Prop., 134, *535. The possession being vacant, the mortgagee or his heir would have a right to enter and hold the possession, subject, nevertheless, to the right of redemption until foreclosed.—*Durand* vs. *Isaacs*, 4 McC., 54; *Stoney* vs. *Shultz*, 1 Hill Ch., 495. "At the common law," says Johnson for the Court, "there is no question that the mortgagee was entitled to the possession of the land after the condition of the mortgage was

broken, or that he might have maintained a possessory action against the mortgagor or any one else in possession and was entitled to enter upon a vacant possession. And if a mortgagee gave notice to the tenant in possession that the money secured by the mortgage has not been paid, the tenant is bound to account with him not only for the accruing rents but the rents in arrears, and the mortgagee may resort to the summary remedy by distress. And in *Moss* vs. *Gallimore,* (Doug., 270,) Lord Mansfield says 'that he considers this remedy a very proper additional advantage to mortgagees to prevent collusion between the tenant and the mortgagor.' Thus stood the common law." "I take it, therefore, as clear," says the Judge, "that, the mortgagor being out of possession, the rights and powers of the mortgagee must be determined according to the rule of the common law, and, accordingly, that he had a right to receive and retain the rents, having given notice of the mortgage to the tenants in possession." So, too, the rights of the mortgagee are the rights of the real or personal representatives of the mortgagee. Of this there can be no question.

In *Mitchell* vs. *Bogan,* (*supra,* 702,) Mr. Justice Wardlaw says: "Throughout the Acts of 1791 and 1797 *mortgagor* and *mortgagee* only are mentioned, without allusion anywhere to the transfer of the rights of either party by act in his lifetime or by his death. Yet it surely was intended, and such has been the received interpretation, that the assignee or executor of a mortgagee should have the same rights and remedies as he himself had. All to whom the rights come are included under the term *mortgagee.*" Such is the common law rule.—1 Wms. on Ex., 575; *Thornbrough* vs. *Baker,* 3 L. C. Eq., 857, and many other authorities.

With these authorities before us, with the legal title in his hand, can it be questioned for a moment to what right the law will refer the possession of John A. Geiger? Suppose he were charged as a wrongdoer or for a trespass. Would he not defend himself by his *title,* by his *right of entry* and *possession,* and not by some imaginary vague parol contract? Suppose in this case a bill had been brought by Kaigler to redeem, could Geiger have claimed? would he have been permitted to prove his part performance by parol evidence of his possession, as founded in contract, when the law would have characterized his possession as founded in another right? Clearly not. This would be to wipe out the Statute of Frauds. In such circumstances the words and the memory of men are silent and the

statute speaks.    Otherwise this would be to enable every mortgagee in possession to establish absolute title by that kind of evidence which the statute was expressly intended to exclude.

With the law as we have shown it to be, the decree nevertheless sustains an alleged parol agreement, made, it is said, by John A. Geiger *as administrator*, upon his possession *as administrator* being evidence of part performance by him in his official capacity *as administrator*.    Be it remembered that the defendant does not and the decree does not anywhere charge John A. Geiger personally, as we shall more particularly see hereafter.    And while the decree does this remarkable thing, it does the other most remarkable thing of decreeing a foreclosure and sale.    These two things would seem to be as wide apart as the antipodes.

1. If the contract of sale be sustained, as it is by the decree, then there could be no foreclosure in equity, as it would leave no equity of redemption in the mortgage to be foreclosed.    His estate in equity would be merged in the contract, would go with it, and the mortgage would fall lifeless by the decree.

2. If it be admitted, as it is by the decree, that the mortgage still had vitality, (and it is only by having vitality that it can be foreclosed,) then this would admit an outstanding equity or estate in equity in the mortgagor, which would be utterly inconsistent with a valid contract of sale to the mortgagee.

From these two propositions many things would follow.    If the mortgage be extinct, (as it clearly must be if the contract be valid,) then, pray, what security does a sale give to the title of the vendee under the contract, or to the title of any purchaser under the decree, as against the general liens of the creditors of the mortgagor Kaigler, who are not parties to the suit?

If, on the other hand, the mortgage has vitality, (and its vitality alone can give the Court jurisdiction in foreclosure,) then, pray, by what principle of law or equity can a Court of equity order the surplus fund (after paying the mortgage debt, should the land purchased bring a large surplus,) to be paid to the mortgagee as the owner of the land under a contract, and, therefore, the owner of the fund, to the exclusion of the other creditors of the mortgagor, who, in a foreclosure and sale, would be legally entitled to such surplus?

Again, if the mortgagee, under the sale in foreclosure, could not, under such a decree, have the benefit of the contract thus enforced

against him, pray by what principle, operating *ex equo et bono,* (should the land bring much less than the mortgage debt,) could the Court refuse to give a decree for the deficit according to the practice of the Court?

Again, if the Court could not prevent a higher bidder at the sale from taking the land from the vendee under the contract, (so called,) how in the name of common sense could a Court under the same contract compel the vendee (so called) to take the land on such contract for the debt?

II. The fourth and fifth exceptions to the decree are as follows:

" Because the said John A. Geiger was not a trustee in the sense of the decree, and could not take possession of land (except under certain peculiar circumstances) in his capacity as administrator, as is alleged in the answer; his duties as administrator *de bonis non* being confined to the proper administration of such personal assets as came into his hands unadministered, and his possession of land, or his purchase of land directly or indirectly, for the estate was without authority.

" Because the defendant knew that his bond and mortgage were assets in the hands of John A. Geiger, as such personal representative, to be collected by him, and the proceeds were first to be applied to the payment of debts, if any, and, second, to be held subject to a division among the parties entitled thereto; and any agreement between the defendant and the said John A. Geiger, as administrator, to divert the assets from their proper channel was on the part of the administrator a breach of trust and on the part of the defendant a fraud, and even in the case of an executed agreement could be set aside by the parties entitled to a distribution of the fund."

By what authority does an administrator undertake to buy land for an estate? The allegation is that " the defendant proposed to deliver to the said John A. Geiger, *as administrator,* possession of the premises, and reconvey the same to him if the said John A. Geiger, as administrator, would cancel and return to the said defendant his bonds and mortgage fully satisfied, to which proposition the said John A. Geiger as administrator assented."

By what authority does he undertake to change the personal assets of the decedent into real estate? By what authority can an administrator use the funds in his hands to purchase even *personal* property for the estate? Since the case of *Frazier* vs. *Vaux,* (1 Hill Eq., 202,) where the executor undertook to use the funds of a plant-

ing estate to purchase negroes for the estate, and the purchase was held to be unauthorized, we had not supposed that the question could ever again arise in our Courts. But what would be said of an administrator going beyond the very *nature* of his office and purchasing *real estate!*

How can one as *administrator* hold the fee of real estate? And yet that is the bargain that has been violated and is here to be enforced. It is not that John A. Geiger, in his proper person, had purchased *in trust* for himself and others. Not at all. He was to pay over the *choses* as *administrator*, and there was to be a conveyance to him as *administrator*. In the stronger case of guardians or trustees, where there is no question as to their relation to the real estate, Chancellor Harper, in the case of *Davis* vs. *Gist*, (Dudley Eq., 1,) holds the following language: "The Chancellor," says he, "supposes James Dugan to have been appointed guardian or trustee in relation to the land. But suppose this be so, certainly a guardian or trustee is not authorized to purchase for his ward or *cestui que trust*, or he may do so at his own risk, subject to his assent or dissent." But John A. Geiger was neither guardian nor trustee, and the defendant makes no such case. If a trustee or guardian would not be authorized to purchase, pray what law authorizes an administrator to purchase land for the estate of his intestate? He has no authority to purchase for the heirs or distributees certainly, nor has he authority to purchase for the creditors. He certainly cannot purchase for himself and pay with the assets of the estate.

The decree converts the administrator, *nolens volens*, into a trustee and puts the case upon the ground of compromise. "The principles which must govern such cases," says the decree, "has recently undergone examination in our Supreme Court in the case of *Bacot* vs. *Heyward*," (5 S. C., 441). That case has absolutely no relation whatever to the case in hand. In their principles they bear no analogy, not even a remote one, to each other. We as counsel had in hand for several weeks the claim of the plaintiff Bacot, and advised that he had no case against the defendant Heyward upon the very grounds upon which it was finally decided in this Court, to wit:

1. It was held that the trust was not executed, but that it was in full force at the time the compromise was made.

2. That the compromise, though unauthorized, was made by the trustee upon a most doubtful claim, upon the validity of what was

known as a negro bond debt, as to the validity of which the Court and the bar were divided in opinion. It was a most doubtful question, and Courts of high authority had decided against such claims. With Mr. Heyward the alternative was whether he should pay half of the bond or run the risk of paying the whole; he accepted the former. With the beneficiaries and the trustee the alternative was whether they should take the certainty of half or run the risk of losing the whole; they in good faith accepted the former.

3. In this condition of things the compromise was concluded, the money paid, the judgment satisfied and the contract became an executed contract. The Court say: "The compromise having been concluded under the circumstances stated and carried into effect by the entry of satisfaction on the judgment, the plaintiff calls upon the Court to set it aside and require the defendant (Heyward) to pay him his portion of the bond which was discharged by the agreement between the trustee and Heyward."

4. The plaintiff made the demand upon the Court after the negro bond question had been decided in such manner as to put an end to the uncertainty involved and upon which the compromise was based; and it was only after the new element of certainty as to the result was manifest that the plaintiff wished to repudiate the compromise.

Under such circumstances the Court refused to lend its aid to the plaintiff and most righteously refused. Every element laid down in the authorities was present in the case and sustained the conclusion: The great uncertainty of the claim, the executed agreement looking to a doubtful issue, the good faith of the transaction, the going back upon a fair and concluded agreement when the uncertainty no longer existed, and finally the application to the Court to lend its aid to undo by its authority what had already been done by the parties.

Is there a single principle here stated applicable to the case in hand?

A reference to these authorities will show that in a *proper case* made for its consideration the Court will inquire:

1. Has there been an *executed* compromise, (*not executory,*) which in good conscience the Court should not disturb?

2. Was that compromise so made founded upon such an uncertain or doubtful claim as would support a wager?

3. Was it such a compromise as the Court would have sanctioned had application been made to it to authorize the same?—3 Leading C. E., 381; 1 Smith's L. C., 552.

We say upon a *proper* case made such would be the inquiries; but our case does not come within the class of cases to which these rules apply, for the simple reason heretofore stated in the argument. But admitting ours to be such a case, could the Court, upon the tests furnished by the authorities, come to any other conclusion than that under the circumstances here alleged this so-called contract would be a clear breach of trust? Eliminate the uncertainty, doubt, risk, hazard, from a compromise, (which would excuse what would otherwise be a breach of trust,) and we have yet to see the case where a Court will sustain any such compromise.

1. As to the *cestui que trust*, the rule would be he may accept or reject the contract as may be most advantageous to himself.

2. As to the other contracting party, the reply would be : If you have any legal rights against the trustee you may pursue them, but you have no redress in a Court of equity.

III. This brings us to the sixth exception to the decree.

"Because it is respectfully submitted that for the Court to go further and by its decree to set up an executory parol agreement and sustain the same against the wishes and interest of the distributees, against the positive denial under oath of the administrator that he ever entered into such an agreement, or ever attempted to bind the interest of those entitled to the fund, is in effect for the Court to set up and compel *a breach of trust by decree* against the protestations of the administrator and the rights and interests of those entitled to its protection."

Even admitting, for the sake of the argument, that such a contract had been made, and the administrator or other trustee, discovering his want of authority, or that the contract was against the true interest of the estate, had refused to carry out the agreement, the Court would never compel its performance. It has been expressly laid down in numerous cases "that a contract of sale by trustees made in breach of trust, will not be specifically enforced."— *Wood* vs. *Richardson*, 4 Beav., 176; *Muloch* vs. *Butler*, 10 Ves., 311; *Thompson* vs. *Blackstone*, 6 Beav., 470. Thus it is laid down by Sir John Leach, V. C., in the case of *Ord* vs. *Noel:* "That if trustees fail in reasonable diligence, if they contract under circumstances of haste and improvidence, if they make the sale with a view

to advance the particular purposes of one party interested in the execution of the trust at the expense of another party, *a Court of equity will not enforce the specific performance* of the contract, however fair and justifiable the conduct of the purchaser may be."— Lewin on Trusts, 462.

"And so," says Mr. Hill, (on Trustees, *282,) "if the person taking from the trustee be a purchaser for valuable consideration, yet if he purchased with notice of the trust his conscience will be affected with the same equity as the trustee from whom he purchased."

Again: "There has been already occasion to state that a purchaser from a trustee (though for valuable consideration) will be bound by the trust in the same manner and to the same extent as the trustee from whom he purchased if the purchase be made with the notice of the trust, and the title of the purchaser will not be strengthened by levying a fine. And we have also seen that this rule applies equally whether the trust is expressly created or arises only by construction of law."—Hill on Trustees, *509, and cases in foot notes.

Again, at page 282: "Although the trustees have the power of disposing of the trust estate at law as if they were the beneficial owners, yet a conveyance by a trustee *without* consideration will not prejudice the title of the *cestui que trust*, but the volunteer will in equity be treated as a trustee for his benefit."

If this be law, what would be said of a case like the present:

1. Where the administrator had no authority to contract or purchase at all?

2. Where the so-called contract was without consideration; the one contracting party having already everything that the other contracting party offered, to wit, the land, and the chance of making the whole debt out of it or out of the defendant?

3. Where the contract was not executed and the effort is now to compel its execution as against a party who had no authority to contract?

4. And where the administrator says to the Court that he has not been guilty of the violation of his trust, but, on the contrary, declares under oath as follows: "I never did agree to take back the land. They tried several times to get me to take back the land. I said to Mr. Davis: 'I can't consent to take back the land.' Kaigler had abandoned possession. Kaigler being out of possession, I went into possession"?

IV. The seventh and eighth exceptions are as follows:

"The decree concludes the rights and interest of those plaintiffs who it is admitted were not parties to the agreement: (1) by giving validity and effect to certain acts of John A. Geiger *as administrator,* who as such had no authority in law to bind the others, and who denies that he ever did so bind them; and (2) by sustaining against them as evidence a mere inference of a third party, founded upon certain words of the said John A. Geiger, all which alleged words, acts and inferences were no part of the alleged contract.

"The decree draws this unauthorized conclusion against the plaintiffs, who were not parties to the so-called agreement, upon the extraordinary legal hypothesis that they were required to *disprove* at the trial (at which they were not present) what was not alleged against them in the answer, to wit, their knowledge of the alleged acts and words of the said John A. Geiger *as administrator,* and the inference drawn therefrom as affecting their rights; and, further, that they were required to rebut the evidence which for the first time came out at the trial and was unequivocally rebutted by the oath of the said Geiger as wholly untrue."

If we examine the answer from its beginning to its end we shall find no allegation that any of the plaintiffs (except John A. Geiger) had, directly or indirectly, any part or lot in this so-called agreement, and even as to him the allegation is against him in his *official* and not in his *personal* character.

The decree says: "If this transaction had taken place between parties acting wholly *in their own right,* there can be no question that in equity it would operate as a satisfaction of the debt." The decree then proceeds in these words: "But the fact that John A. Geiger was acting not only for himself individually," [there is no charge against him *individually,* as we have seen in the answer,] "but also as a fiduciary of others, which renders it necessary, if the *cestui que trust* are to be bound, that something more should appear besides the bare making of the agreement and its enforceable character in equity."

This is quite true; but what more *should* appear?

1. It should certainly be *charged* in the answer against such *cestui que trust* (as they are called) that they had joined in the so-called contract, or that they knew of such contract and had assented thereto in such words or in such terms or by such acts as would be binding upon them in law. I shall not here again elabo-

rate the argument of the Statute of Frauds as applicable to them. I call attention to it.

2. Had this been done there would then have been in the answer such an allegation of fact as would have put the parties against whom the allegation had been made upon their defense, and would have opened the case for proof in support of the affirmative and of the negative of the allegation so made.

In this case there was neither the allegation by the defendant to put the plaintiffs on their defense, nor was there any proof at the trial which could possibly bind them, even if the allegation had been made.

*McMaster & LeConte, Rice,* contra:

The general facts of the case are clearly stated in the decision of the Court below.

The exceptions, in effect, are to the whole decision—as well matters of fact as of law.

I. As to the findings of fact:

1. The testimony in the case was taken orally, in open Court, without a stenographer. The brief was made up from notes taken in the course of the trial, the meagerness of which is apparent upon their face. In such a case, the wise and well-settled principle governing this Court, that the decision below will not be disturbed unless it is against the overwhelming force of the evidence, is peculiarly applicable.

This leaves, in reality, no room for argument. There was some conflict of testimony, but the preponderance was in favor of the findings. The Judge accepted the testimony of Kaigler, the defendant, confirmed as it was by the witness, Kinsler Davis, and corroborated by the written order for titles and other testimony, and rejected the statements of the plaintiff, John A. Geiger. He had the best opportunity to judge of the credibility of the witnesses, and we assume that his conclusions upon such a matter will be accepted by this Court.

2. We submit the following considerations, in addition, upon the third finding of fact:

(a.) The settlement must be considered *as of the time it was made* (early in 1874). It was then just, fair and advantageous to the plaintiffs. That the land has subsequently depreciated in their hands is no ground to impeach it, but the contrary.

(b.) The defendant, Kaigler, purchased the land in 1863 for $12,000—at war prices; or, at least, it may be assumed at a high valuation, as it was sold upon disadvantageous terms to the vendee. He has actually paid about the amount of the purchase money for the land, and, after expending large sums of money on improvements, has returned the land itself. He cannot, therefore, be said to have had any advantage from the bargain.

(c.) As to the suggestion that the land was returned depleted of timber. The valuable timber, viz., all in the neighborhood of the mill, had been cut before Kaigler purchased. Davis testified that most all cut by him had to be hauled two miles. This destroyed its value. Hence Davis failed. The condition of the place as to timber seems to be pretty much the same now as it was when Kaigler bought. It must be remembered that the tract is about 5,000 acres. The relative amount of timber cut by Davis was not great, and the transportation made it of little value. Besides, Geiger went over the place before the settlement.

(d.) It is fair to assume that at the time of the settlement the land needed only good management to make it worth more than the balance of the purchase money. Geiger evidently thought so. That the other distributees permitted the settlement to stand so long shows that they were not originally displeased. The bad management of Geiger and the general depression in the value of property may account for their present dissatisfaction.

(e.) Upon the whole case, as presented from the stand, having regard to the character of the witnesses and the many circumstances which give color and force to testimony, but which cannot be reproduced here, the Judge below formed the deliberate judgment that the settlement was "so fair and reasonable that the Court would have sanctioned it had the administrator applied there for authority."

II. As to the conclusions of law:

1. The agreement was not within the Statute of Frauds.

(a.) The Court decided distinctly and in accordance with the evidence that Geiger's entry upon the land and his subsequent occupancy were under the agreement. This was such part performance as to take the case out of the statute.—*Anderson* vs. *Chick*, 1 Bail. Eq., 118; *Gregorie* vs. *Bulow*, Rich. Eq. Cases, 235; *Hatcher* vs. *Hatcher*, McM. Eq , 311; *Cornwell* vs. *Spence*, Harp. Eq., 258; *Smith* vs. *Smith*, 1 S. C., 130.

(b.) The plaintiffs were seeking equity and bound to do equity.

2. It is objected that Geiger, as administrator, could not legally take the land because his duties were confined to the administration of personal assets.   Upon this we submit—

(a.) That where a debt secured by mortgage is to be administered, everything incident to the security of the debt is within the purview of the trust.   If, in the interest of the estate, he takes the land for the debt, the land is, *quoad* his trust, personal estate.

(b.) But here the land was sold by Geiger's predecessor in the trust—the executor of Henry Geiger.   The plaintiff's case rests upon the assumption that the personal representative had authority to sell the land and has now the right to the proceeds of the sale of land.   It is a strange argument that one who can sell land and is entitled to the proceeds cannot bargain to take the land back because it is intermeddling with the realty.   Judge Carpenter's decision upon the demurrer determined the law for this case: that the administrator *de bonis non* was the legal trustee of the bonds and mortgage.   Otherwise the demurrer was good.—Code, § 135.

(c.) The bonds and mortgage were for lands sold by the executor of Henry Geiger, whose successor John A. Geiger, as administrator *de bonis non*, was held to be.   If the latter could not contract as to the land the former was also without authority.   In that case everything done concerning the land was void, and in gaining possession of the land the rights of the plaintiffs, as heirs of Henry Geiger, were fully satisfied.

3. The bonds and mortgage had their birth in a compromise with the executor of the estate.   In seeking to enforce them the plaintiffs adopt this compromise.   How can they say, then, that a settlement with the representative of the estate is necessarily and under all circumstances void?   If it is not necessarily void, then, as the Court below decided, its validity must depend upon the circumstances, and the question is really one of fact.

4. The exceptions assume that the settlement was a breach of trust.   This is the point in controversy.   The Court below decided that it was no breach of trust, because, the trust being to collect the debt, it was within the purview of the trust, if the exigency demanded it, to make a settlement, provided the settlement was so just and advantageous that the Court would have sanctioned it.— *Swicard* vs. *Adms. of Swicard*, 2 M. Const. R., 218; *Gage* vs. *Adms. of Johnson*, 1 McC., 492; *Chappel* vs. *Brown*, 1 Bail., 528; *Johnston* vs. *Lewis*, Rice Eq., 40.

5. The peculiarity of this case was that John A. Geiger, who made the settlement, was seeking to deny and repudiate it. Hence, in seeking to ascertain his mind and purpose in the settlement, the Court had no help from him, but as many difficulties as possible thrown in the way. And yet, to determine the equities, it was necessary to find the state of things existing at the time of the transaction. This the Court did.

6. The Court below meted out to the plaintiffs the fullest measure of equity consistent with the equities of the defendant, arising (1) from the agreement with the trustee, which, being adjudged fair and just, &c., and fully performed by the defendant, was, standing alone, sufficient to justify the decree; and (2) from the implied sanction the other plaintiffs had given to the settlement by permitting their representative to hold and enjoy the land for two years, and their laches in delaying to assert their claim until it had become impossible to restore the parties to their original positions, and the settlement could not be opened without great injury to the defendant.— *Gillam* vs. *Briggs*, Rich. Eq. Cases, 435.

7. It was alleged in the record, and admitted, that the consideration of the bonds was land sold by the executor of Henry Geiger. It was not alleged, nor was any evidence produced to show, that the executor had any authority to make the sale. The presumption from these facts was that the sale was void and the bonds wholly without consideration. This would have been a good defense to an action upon the bonds even at law. Certainly, under such circumstances, no money decree should have been rendered against the defendant.

8. If the Court should come to the conclusion that the decree is erroneous for any cause, we then submit that the order of Judge Carpenter in the cause, made October 18, 1875, overruling the demurrer, should be set aside.

The complaint alleged that the bonds and mortgage were made in consideration of the sale of lands by the executor of Henry Geiger, and did not allege that he had any authority to sell. It thus was made to appear upon the face of the record that the bonds were without consideration, and hence that the plaintiffs had no cause of action.

November   , 1877.   The opinion of the Court was delivered by

McIVER, A. J.   This action was brought to foreclose a mortgage of real estate given by the defendant to Alexander Geiger as executor of Henry J. Geiger, to secure the payment of the purchase money of a tract of land sold and conveyed by said Alexander Geiger, as executor as aforesaid, to the defendant. The plaintiffs are the heirs-at-law and devisees of Henry J. Geiger, and one of them, John A. Geiger, is likewise the administrator *de bonis non,* with the will annexed, of said Henry J. Geiger, he having taken out such letters after the death of said Alexander Geiger as well as after the death of onê Inabinet, to whom letters of administration *de bonis non* upon the estate of Henry J. Geiger had been originally granted. The defense set up was, that by an agreement entered into between the defendant and the plaintiff, John A. Geiger, as administrator *de bonis non* of Henry J. Geiger, who then, as now in this action, claimed to be the legal owner and holder of the mortgage, together with the bond which it was given to secure, the defendant was to surrender to the said John A. Geiger, as administrator as aforesaid, full possession of the premises, with all improvements thereon, and reconvey the same to him, and he, the said John A. Geiger, as such administrator, was to cancel and return to the said defendant the said bond and mortgages fully satisfied; that, in pursuance of such agreement, the defendant immediately surrendered possession of the premises to said John A. Geiger, and that he has ever since held possession of the same, receiving the rents and profits thereof, and that the only reason why the settlement was not completely carried out was that the attorney of the former administrator, (Inabinet,) who had possession of the bonds and mortgage, refused to deliver them up until administration was taken out upon the estate of Inabinet. The plaintiffs denied the making of any such agreement, and also took the ground that, even were such agreement established, it could not have the effect, claimed for it, of barring the action of the plaintiffs. The Circuit Judge, having heard the case upon the pleadings and evidence and argument of counsel, decided as matter of fact:

1st. That the agreement as set up by the defendant was made, and that, "in pursuance of this agreement, the said administrator was let into possession of the said premises, and assumed, and has ever since exercised, an exclusive control over the same, receiving

the rents and profits of the land and dealing with it in all respects as the owner.

2d. That the defendant has always been ready and willing to complete the performance of the agreement upon his part, and that it was the fault of the said administrator that the agreement was not perfected by the legal conveyance of the land and the satisfaction of the bond and mortgage.

3d. That the agreement was made in good faith on both sides and was, "under all the circumstances, a fair and most reasonable settlement," or, as he says in another part of his decree, "that, under the circumstances, the settlement was so fair and reasonable that the Court would have sanctioned it had the administrator applied there for authority."

He then finds as matter of law, "that the plaintiffs are bound in equity by the settlement," and concludes his decree with an order: "That the plaintiffs have leave to apply at the foot of this decree for all necessary orders to carry it into effect by the foreclosure of the mortgage set forth in the complaint and the sale of the mortgaged premises; but that the said defendant be, and he is hereby, adjudged to be discharged and released from all personal liability upon the said bonds, which must be marked fully satisfied upon the sale;" and then directed that the plaintiffs pay all the costs of the action.

In conformity with the well-settled rule, this Court will not interfere with the findings of fact by the Circuit Judge unless where such findings are without any evidence to support them or against the overbearing weight of the evidence. Without entering into any discussion of the testimony, it is sufficient for us to say that we are unable to perceive any ground upon which the findings of the Circuit Judge can, under the rule above stated, be interfered with. We shall, therefore, in the further discussion of this case, assume the correctness of the facts as found by the Court below. It will be observed that this is not a case in which a party is seeking by an action to enforce the specific performance of an agreement, but the defendant is here simply invoking as a defense in bar of the plaintiffs' action the agreement hereinbefore stated. Upon the well-established principle that he who seeks equity must first do equity, the Court should not lend its aid in the enforcement of a claim which, though not technically discharged, ought to be by virtue of a previous agreement between the parties. This would involve the

exercise of the power of the Court to enforce that which in equity and good conscience ought not to be done, and the Court will not so exercise its powers. There can be no doubt that if the agreement to satisfy the mortgage and cancel the bonds, followed up by a surrender of the mortgaged premises to the mortgagee, in pursuance of such agreement, had been a transaction between two parties acting in their own right, the defense here set up would have been complete and effectual. The only question, then, remaining is whether an administrator could make such an agreement in reference to a chose in action belonging to his intestate's estate with like effect. This involves the general question whether an administrator has a right to compromise a claim which constitutes a portion of the assets of his intestate.

The question as presented here cannot be affected by the provisions of the statute as has been supposed, (Gen. Stat., Chap. XC, § 9, p. 458,) for two reasons : 1. Because that statute is, by its very terms, merely permissive. It merely authorizes a compromise in certain specified cases and does not purport either to establish a general rule or to prohibit compromises in any other cases. 2. The case now before the Court does not come within any of the specified cases. The demands referred to there are such as would be *appraised*—that is, such as were in existence at the time of the death of the intestate and those which arose subsequent to his death; for example, notes taken at the sale of the estate by the administrator cannot be brought within the terms of the statute. Here the bonds and mortgage were taken subsequent to the death of Henry J. Geiger, and were payable to his executor and not to him, and would not, therefore, be appraised as a part of his estate. The question must, therefore, be determined upon the general principles regulating the rights and duties incident to the office of an administrator. We are, however, saved the necessity of inquiring into these principles by express adjudications of the Court of last resort, which, in our judgment, finally settle the question.

In *Bacot* vs. *Heyward*, (5 S. C., 441,) a *cestui que trust* attempted to set up a judgment which had been compromised by the trustee without his knowledge or acquiescence, and the act of the trustee in making the compromise was sustained upon the ground that it was such a compromise as the Court would have authorized if it had been previously applied for. Moses, C. J., in delivering the opinion of the Court, uses this language: "It cannot be questioned that as

a general right, incident to his office, a trustee has no power to compromise a debt on behalf of his *cestui que trust.*  *  *  *  *  *
While, however, the general right is withheld, its denial is subject to conditions and exceptions which qualify the rule. If the Court which is asked to vacate it finds from an examination of the circumstances under which it was made that its sanction to the trustee if previously applied for would have been accorded, it will recognize it as an act consistent with the principles and doctrines which it enforces and sustain it."

It is very true that these remarks were made in reference to a trustee, strictly so called, but we see no reason why they are not equally applicable to an executor or administrator, who is certainly a trustee; or as Inglis, in *Rhame* vs. *Lewis*, (13 Rich. Eq., 292,) in speaking of the tenure by which an administrator holds the assets of his intestate, says: "He holds the title not in any wise for his own use and benefit, but wholly for the uses of the office as the means wherewith to fulfill its duties.  *  *  *  *  His estate is, therefore, according to the strictest definition of a special trust."

The case of *Smith* vs. *Prothro*, (2 S. C., 391,) furnishes an instance in which the same principle was applied to the case of an administrator. Indeed, the various cases in which this Court, as well as the late Court of Appeals, have sanctioned the acts of administrators and trustees in accepting Confederate treasury notes in satisfaction of bonds secured by mortgages of real estate must necessarily ultimately rest upon this principle, for such notes never acquired the legal *attributes of money*, they never having been made a legal tender even by the authorities of the Confederate Government; and, therefore, when the holder of a claim accepted satisfaction of it in anything other than *money*, it was to that extent a compromise,—a yielding of legal right,—for certainly every creditor has the right to have his claim paid in *money*, and he is not bound to accept anything else in satisfaction of it; and if he does, he, to that extent, compromises or yields his legal rights. The case, therefore, resolved itself into a question of fact whether the arrangement between the administrator and the defendant was such as the Court would, if previously applied to, have sanctioned. This question having been determined by the Circuit Court in favor of the defendant, must, as we have above stated, be regarded here as conclusively settled.

There is another view which may be taken of this case. Assuming, as has been done by the Circuit Judge, and as contended for

here by the appellants, that John A. Geiger, as administrator *de bonis non* of Henry J. Geiger, was the legal owner and holder of the bonds secured by the mortgage, it is difficult to understand why he could not and did not bring the action as sole plaintiff. We are unable to perceive the necessity or propriety of uniting with him, as co-plaintiffs, the heirs and devisees. The reasons suggested for such a course, though quite ingenious, do not strike us as satisfactory. Suppose, then, the action had been brought in the name of the administrator alone, could it for a moment have been doubted that the agreement, partially performed, as it was found to be by the Circuit Judge, on the part of the defendant, would have been a bar to the plaintiff's action? Certainly, then, the addition of unnecessary, not to say improper, parties plaintiff cannot be allowed to change the result. The Court is not unmindful of the right of parties interested in an estate, *upon a proper case made*, to set aside an arrangement made between an executor or administrator and a debtor of the estate for the settlement or satisfaction of the debt without actual payment, as, for example, in the case of *Thomas* vs. *Gage & Johnson*, (Harp. Eq., 197,) where an insolvent administrator, by collusion with the debtor, accepted satisfaction of a judgment in favor of the estate against such debtor in a receipt for an individual debt due by the administrator to the debtor, or in any other case where the transaction amounts to a breach of trust, in which the debtor of the estate knowingly participates. But in such a case it is necessary to allege and prove fraud or collusion between the administrator and the debtor. This, however, is not such a case, for there is no such allegation and no such proof. In *Mayer* vs. *Mordecai*, (1 S. C., 380,) an effort was made by a *cestui que trust* not merely to hold the trustee liable, but also to set up certain bonds and mortgages, in satisfaction of which the trustee had received Confederate treasury notes, worth at the time, in the market, much less than the bonds and mortgages. But the Court, while holding the act of the trustee to be a breach of trust, for which he was liable, refused to set up the bonds and mortgages as against the original debtors, upon the ground that there was no proof of any fraud or collusion upon their part, Now, in that case the debtors knew that the trustee was not only receiving, in satisfaction of their bonds and mortgages, something that was not money, but something that was of less value than such bonds and mortgages, just as in this case the defendant knew that the administrator was agreeing to re-

ceive in satisfaction of the mortgage something that was not money, but whether of greater or less value in the market does not appear from the evidence, there being no testimony as to whether defendant was solvent or insolvent at the time the agreement was made, and if insolvent it must have been at least of equal value, for in such case the administrator could get no more than what he did get—the land. So that if the absence of fraud and collusion in the one case be a protection, it must likewise be in the other.

As is said by the late Court of Appeals in *Austin* vs. *Kinsman*, (13 Rich. Eq., 265,) "a creditor, though entitled to demand payment in lawful money, may waive his right and accept any substitute he pleases, and his voluntary acceptance of such substitute as payment makes it so;" or, as is said by the law Court in *Bush* vs. *Kilcrease*, (1 Strob., 419,) in which the question was whether the Ordinary could accept a bond of third persons in satisfaction of a bond given by defendant to secure the purchase money of land sold for partition: "It cannot be questioned that the Ordinary who receives a bond for the payment of the purchase money of lands directed by him to be sold for partition may collect the money and thus discharge the bond, or he may, for aught that appears to the Court, throw the instrument into the fire; and if he may do the one or the other, it is not perceived why he may not receive satisfaction for it in another bond, in a bill of exchange, or in any manner by which such a debt is extinguished, as other parties." So that it would seem to be the rule of law that if the legal owner and holder of a chose in action, in consideration of something other than money, acknowledges satisfaction, the claim is absolutely extinguished.

This rule, however, like most others, is subject to this qualification: that where such legal owner holds the chose in action not merely in his own right but for the benefit of others, and accepts in satisfaction of it anything other than money, such claim may, at the instance of the parties beneficially interested in it, be set up against the debtor, provided it can be shown that there was fraud or collusion between the debtor and such legal owner and holder of the chose in action. The decree of the Circuit Judge, however, in ordering a sale under the mortgage, after having determined that the mortgage was extinguished, was erroneous and must to that extent be set aside. But as the conclusion reached by the Circuit Judge as to the effect of the defense set up is sustained by this Court, the action cannot be sustained.

It is, therefore, ordered that so much of the decree of the Circuit Judge as provides for a sale of the mortgaged premises be set aside and that the complaint be dismissed.

*Willard*, C. J., and *Kershaw*, acting A. J., concurred.